UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| UNITED STATES OF AMERICA | § | |
| --- | --- | --- |
| | § | |
| v. | § | CRIMINAL ACTION H-13-298 |
| | § | |
| HAROLD JOSEPH CARMOUCHE, *et al.* | § | |

**MEMORANDUM OPINION AND ORDER**

Pending before the court are Kenton Deon Harrell ("Harrell") and Harold Joseph Carmouche's ("Carmouche") motions to sever (Dkts. 99, 101) and Harrell's motion to suppress (Dkt. 100).[1] The court will continue to take the motions to sever under advisement; however, after considering the evidence, parties' arguments, and applicable law, the court is of the opinion that Harrell's motion to suppress (Dkt. 100) should be DENIED.

**I. BACKGROUND**

Five defendants: (1) Harold Joseph Carmouche; (2) Kenneth Shane Howard; (3) Malcolm Derrail Williams; (4) Charles Ray Blake; and (5) Kenton Deon Harrell were charged in a two count indictment alleging conspiracy to interfere with commerce by robbery, 18 U.S.C. § 1951(a), and conspiracy to use or carry a firearm during and in relation to a crime of violence, 18 U.S.C. § 924(o). Defendants allegedly conspired to rob a U.S. Postal vehicle on February 21, 2013. Specifically, a U.S. Postal vehicle was departing the downtown Houston Post Office. According to the driver of the postal vehicle, a red Chevrolet Impala pulled in front of his vehicle and blocked his path. After the vehicles stopped, a black male, wearing a face mask and carrying a pistol exited the Impala, ordered the driver from the vehicle, entered the vehicle, and both the Impala and the postal vehicle

---

[1] Charles Ray Blake moved to join in these motions (Dkt. 108); however, he has since pled guilty.

drove away. The postal vehicle was recovered a few hours later several miles away from the location of the robbery. The merchandise in the vehicle was stolen, including $240,000 worth of Rolex watches.

Harrell filed a motion to suppress all written and oral statements made by him to Postal Inspectors in this case, arguing that his statements were made involuntarily. Dkt. 100. Harrell and Carmouche also filed motions to sever their respective trials from those of their co-defendants. Dkts. 99, 101. Blake has since pled guilty, and Howard and Williams have also expressed their intent to plead guilty. The court held a hearing on April 4, 2014 and heard testimony and arguments from the parties regarding the motions to suppress and sever. Postal Inspector Devin Mowrey, the lead investigator, testified on behalf of the government. He testified regarding the various statements taken from the defendants in this case.

Relevant to the motion to suppress, Inspector Mowrey testified that he had received information that Harrell was at a meeting on the day of or on the day before the robbery where the robbery was discussed among the conspirators. On April 3, 2013, he asked Harrell to meet him at a local Denny's restaurant in order to discuss the investigation of the robbery. Harrell agreed to meet with the Inspector. Harrell traveled to the Denny's restaurant on his own accord. Inspector Mowrey and his partner, Inspector Boyd, questioned Harrell about the facts they had gathered during their investigation. Inspector Mowrey stated that during the interview the facts known to the Inspectors were presented to Harrell, and he was given an opportunity to explain the information or provide his version of the events. They told him that he was involved in their investigation of the robbery, but did not tell him that anyone had implicated him as being a participant in the robbery. Inspector

2

Mowrey testified that he told Harrell he knew he was at the meeting where Howard, Williams, and Carmouche planned the robbery.

Inspector Mowrey did not say to Harrell whether he believed Harrell was merely present at the planning meeting or a participant in the meeting and robbery. Inspector Mowrey told Harrell that "it is better to be a witness than a defendant, and to tell us the truth." He implied there was value in being a witness, but explained that all charging decisions were made by the U.S. Attorney's Office. Harrell confirmed he was at the planning meeting. Inspector Mowrey testified that Harrell was not a target of the investigation at this time. This first interview lasted approximately 30 minutes, and Harrell left the restaurant. Harrell was not read his *Miranda* rights and was not placed into custody.

Inspectors Mowrey and Boyd had another meeting with Harrell and Charles Blake at a Denny's restaurant in April. Inspector Mowrey requested the interview with Harrell and told him that he needed to continue to cooperate and that it was better to cooperate. Harrell agreed to go to the Denny's to be interviewed. The second meeting was held to gain further details about the information provided by Harrell during their first meeting. Inspector Mowrey did not recall if he told Harrell that it was better to be a witness, than a defendant during this interview. The Inspector relayed to Harrell that he only believed Harrell was involved in this investigation, and he was not a target. Harrell was not read his *Miranda* rights, and he was not taken into custody.

Inspector Mowrey still viewed Harrell as a potential witness, and he expressed this belief to the Assistant U.S. Attorney in charge of the case. Inspector Mowrey had no other in-person meetings with Harrell in the interval between April and November, but only a few telephone conversations.

Inspector Mowrey discussed with Harrell the prospect of testifying at trial as a witness. By November 2013, Carmouche, Williams, and Howard had been indicted and arrested.

On November 13, 2013, Inspector Mowrey asked Harrell to come down to the Postal Inspector's Office to take a polygraph examination in order to test his veracity as a witness. Inspector Mowrey believed that Harrell was not telling him the complete truth or that certain information was being withheld by Harrell. Harrell agreed to undergo a polygraph examination and came to the Postal Inspector's Office by his own transportation. Harrell was read his *Miranda* rights by the polygrapher, and the polygrapher explained that providing the *Miranda* rights was standard protocol for all persons being given a polygraph. Harrell signed the waiver of his *Miranda* rights, took the polygraph examination, and provided another statement to Inspector Mowrey. This encounter lasted approximately 3-4 hours.

Inspector Mowrey testified that the polygraph results revealed that Harrell had not been completely truthful about the robbery or he was withholding information. During the interview, Harrell asked Inspector Mowrey if he was in trouble, and the Inspector responded it was up to the U.S. Attorney's Office. Harrell was indicted on December 12, 2013 and arrested days later. Harrell now moves to suppress all of his statements to Postal Inspectors on the basis that Inspector Mowrey's direct and indirect statements that he would be a witness rendered the statements involuntary.

## II.  LEGAL STANDARD

The Government bears the burden of proving, by a preponderance of the evidence, that the statements made during an interrogation were voluntary. *United States v. Rojas–Martinez*, 968 F.2d 415, 417–18 (5th Cir. 1992) (citing *Colorado v. Connelly* 479 U.S. 157, 168–69, 107 S. Ct. 515

(1986)). The voluntariness of a defendant's statement is reviewed based on the totality of the circumstances surrounding the interrogation. *Dickerson v. United States*, 530 U.S. 428, 437, 120 S. Ct. 2326 (2000); *United States v. Cardenas*, 410 F.3d 287, 293 (5th Cir. 2005). When reviewing the totality of the circumstances, both the characteristics of the accused and details of the interrogation should be considered. *Dickerson*, 530 U.S. at 434. "A confession is voluntary if, under the totality of the circumstances, the statement is the product of the accused's free and rational choice." *United States v. Broussard*, 80 F.3d 1025, 1033 (5th Cir. 1996).

To render a confession involuntary, a defendant must demonstrate that law enforcement officers engaged in coercive conduct and that there was a causal link between the officer's coercive conduct and the confession. *United States v. Bell*, 367 F.3d 452, 461 (5th Cir. 2004) (citing *Connelly*, 479 U.S. at 163–65). Coercive conduct refers not only to physical violence but also to other deliberate means calculated to break the defendant's will, including direct or subtle forms of psychological persuasion. *Broussard*, 80 F.3d at 1034. The Fifth Circuit has been careful to note that "coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment." *United States v. Reynolds*, 367 F.3d 294, 298 (5th Cir. 2004). The court must examine "'whether a defendant's will was overborne by the circumstances surrounding the giving of [an incriminating statement]." *Dickerson*, 530 U.S. at 434 (citation omitted).

### III. ANALYSIS

Harrell argues that he was induced into giving statements to Postal Inspectors by Inspector Mowrey's representations that he was not a target of the robbery investigation and that he was only being interviewed as a witness. He claims that his statements were rendered involuntary based on

the circumstances surrounding the interviews and the impressions left by Inspector Mowrey with Harrell regarding his status in the investigation. Certain indirect or implied promises of leniency or immunity may be "so attractive they render a resulting confession involuntary" if the promise is not kept. *United States v. Fernandes*, 285 Fed. Appx. 119, 124 (5th Cir. 2008) (quoting *Streetman v. Lynaugh*, 812 F.2d 950, 957 (5th Cir. 1987)). However, "a confession is not involuntary merely because the suspect was promised leniency if he cooperated with law enforcement officials." *United States v. Santiago*, 410 F.3d 193, 202 (5th Cir. 2005). The existence of a promise constitutes but one factor in the voluntariness determination and "does *not* render a confession involuntary *per se*." *Fernandes*, 285 Fed. Appx. at 124 (citing *Hawkins v. Lynaugh*, 844 F.2d 1132, 1140 (5th Cir. 1988)).

Here, the court credits the testimony of Inspector Mowrey[2] and finds that Harrell was not promised any sort of leniency or immunity, which under the totality of the circumstances, would render his statements involuntary. Based on the testimony of Inspector Mowrey, Harrell willingly attended, traveling to and from by his own means, three personal interviews with Inspector Mowrey. The encounters were not particularly lengthy, two interviews were conducted at a public restaurant, and Harrell was informed that he was free to leave at any time. He was not in custody during any of the interviews.

---

[2] Harrell did not testify at the suppression hearing, but following the hearing, submitted an affidavit in support of his motion to suppress. Dkt. 114. The court views Harrell's affidavit as self-serving and gives it little weight. Harrell has a constitutional right to choose not to testify; however, "he cannot use that right as shield to protect him from potential criminal liability while concomitantly wielding his affidavit[ ] as a sword to cast doubt on testimony found credible by the court as fact-finder." *DiMattina v. United States*, 949 F. Supp. 2d 387, 410-11 (E.D.N.Y. 2013) (citing *A.B. Leach & Co. v. Peirson*, 275 U.S. 120, 128, 48 S. Ct. 57 (1927)); *see also United States v. Rodriguez*, 368 Fed.Appx. 178, 180 (2d Cir. 2010) ("Although defendant submitted an affidavit . . . it was not clearly erroneous for the District Court to credit the officers' testimony over defendant's affidavit." (citation omitted)).

With regard to Inspector Mowrey's direct or indirect implications that Harrell would only be a witness in this case, Inspector Mowrey's testimony confirms that Harrell was thought of and expected to be a witness on behalf of the government until the point the polygraph examination revealed he had been untruthful.  Inspector Mowrey testified that he did tell Harrell that it was better to be a witness than a defendant and there was some value in being a witness.  However, Inspector Mowrey also advised Harrell more than once that the U.S. Attorney's Office retained the ultimate decision on whether or not he would be charged in connection with the robbery and that the statements being made by Harrell were being provided to the U.S. Attorney's Office.  And, despite the lack of any custodial interrogation, he was read and waived his *Miranda* rights during the final interview.  These warnings accurately informed him that his statements could be used against him, and based upon Harrell's experience with law enforcement, the court does not find that he was unable to understand these warnings.  *See Bell*, 367 F.3d at 461 (trickery or deceit is only prohibited to the extent that it deprives the defendant of knowledge essential to his ability to understand the nature of his rights and the consequences of abandoning them).

Inspector Mowrey's statements that Harrell was not a target and that it would be better to be a witness were not promises of leniency or immunity.  *See Cardenas*, 410 F.3d at 295 (encouragement to cooperate with the government as a witness not held to constitute coercion).  At all times prior to the polygraph examination, Harrell was viewed and treated by the Inspector as a witness.  Thus, there was no misrepresentation or deception on the part of the Inspectors by taking this position.  Ultimately, it was the false or withheld information that changed Harrell's status in the investigation from witness to target.

The Fifth Circuit considered a similar case in *United States v. Fernandes*. 285 Fed. Appx. 119 (5th Cir. 2008). In *Fernandes*, the police officers initiated a "knock-and-talk" at the suspect's residence related to information that the defendant was selling drugs from his apartment. *Id.* at 121. The officer told defendant "I don't want you to get in any trouble. That's not why I'm here . . . if I can respond to this complaint and say I've spoke to [defendant], and he gave me the bong, and I went away, then we're over with it, okay." *Id.* The officers eventually gained access to the defendnat's apartment and observed other paraphernalia used to distribute drugs. *Id.* at 122. At that point, defendant was placed under arrest. *Id.*

Fernandes argued that his statements should be suppressed because the officers extracted his incriminatory statements by making promises that the incident would be "over with" if he produced his bong. *Id.* at 124. The Fifth Circuit affirmed the district court's rejection of this argument. The court found the officer's statement did not, when viewed in the context of the entire encounter, render defendant's statements involuntary. *Id.* at 125. The statement was "at most an implication of leniency," and was merely a "prediction of future events, rather than an explicit promise." *Id.* at 124-25. "[I]ndirect promises do not have the potency of direct promises." *Id.* at 124 (quoting *Hawkins*, 844 F.2d at 1140). Additionally, as found by the district court, the statement by the officer was likely true when he told the suspect to give him the bong and then the incident would be "over with." *Id.* at 124. Had only a bong resulted from the consensual encounter, then the officers likely would have terminated the encounter. *Id.* Thus, no explicit promises of leniency were found based on the officer's statement. *Id.*

Like the statement in *Fernandes*, Inspector Mowrey did not make any explicit promises of immunity to Harrell. The Inspector did not tell Harrell that he would not be indicted and did not use

8

trickery or deception to secure Harrell's statements. In fact, Inspector Mowrey's statements that implied Harrell was being questioned as a witness were true when made. Harrell had not been a target of the investigation, and before receiving confirmation that Harrell was not being completely truthful, the Inspector believed Harrell would be a witness on behalf of the government. The implication was not that the defendant would be immune from prosecution, but rather that the defendant would not face prosecution so long as his account of the event proved true. Therefore, based on the totality of the circumstances, the court does not find that Harrell's will was overborne by the Inspector's interrogation tactics such that his statements were rendered involuntary.

## IV. Conclusion

Because the court finds that Harrell's statements were given voluntarily, the court DENIES Harrell's motion to suppress. Dkt. 100. The court will continue to take the motions to sever (Dkts. 99, 101) under advisement.

It is so ORDERED.

Signed at Houston, Texas on April 28, 2014.

Gray H. Miller
United States District Judge